IN THE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **STEVEN HUNTER**<br><br>       Plaintiff,<br><br>v.<br><br>**UNION PACIFIC RAILROAD COMPANY**<br><br>       Defendant | CA No. 4:11-cv-3408<br><br>JURY DEMANDED |

PLAINTIFF'S ORIGINAL COMPLAINT

1. PRELIMINARY STATEMENT

1.1.   Plaintiff demands a jury for any and all issues triable to a jury. This action seeks declaratory, injunctive, and equitable relief; compensatory, punitive, liquidated and actual damages, and costs and attorney's fees for the discrimination suffered by Plaintiff, STEVEN HUNTER, due to UNION PACIFIC RAILROAD COMPANY's (hereinafter "Defendant") taking adverse employment actions against him.

1.2   This action arises under Title VII of the Civil Rights Act of 1964, as amended.

1.3   This action also arises under 42 U.S.C. § 1981.

2. JURISDICTION

2.1.   The jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 2000e *et. seq.*, as amended, 42 U.S.C. § 1981and 28 U.S.C. §1331.

3. VENUE

3.1.   Venue of this action is proper in this court, pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district and Plaintiff, at all times while an employee of Defendant resided in this judicial district.

## 4. PARTIES

4.1. Plaintiff is a former employee of Defendant and resides in Harris County, Katy, Texas.

4.2. Defendant Union Pacific Railroad Company is an employer (as defined by all relevant statutes) qualified to do business in Texas and employs more than 50 regular employees. Defendant Union Pacific Railroad Company can be served by serving its agent for service, CT Corporation System, 350 N. St. Paul Street, Suite 2900, Dallas, Texas 75201-4234.

## 5. STATEMENT OF THE CLAIMS

5.1. FACTS

5.2. Plaintiff is an African American male who worked for Defendant Union Pacific Railroad for 20 years. Plaintiff maintained a spotless and excellent work record with Defendant over those 20 years. Prior to the events leading up to this lawsuit, Defendant never disciplined Plaintiff. Plaintiff's last position was as a supervisor of the car department or foreman.

5.3. On October 10, 2009, a supervisor randomly informed Plaintiff to report to the manager's office to meet another supervisor. Plaintiff drove 5 miles to the manager's office at night (just before midnight) under Plaintiff's own volition. When Plaintiff arrived at the manager's office, a manager was not present. The office light was off; the only light on was in the hall. Instead, someone was present who said that he was a "tester." No one from the railroad was present to provide Plaintiff policies or procedures or to tell Plaintiff who this man was. This man was a stranger to Plaintiff. Defendant never told Plaintiff to appear at this site for a drug test.

5.4. Union Pacific Railroad follows their policies and procedures for Caucasian employees and provides them with a representative at drug testing time.

5.5. Union Pacific Railroad's policies and procedures specifically state, "after you have been selected, you must cooperate with the <u>railroad representative</u> [emphasis ours] and the

collector. Union Pacific Railroad wholly failed to have a representative present for Plaintiff to cooperate with. Union Pacific Railroad follows their policies and procedures and maintains a representative present for Caucasian employees.

5.6.   This was not a legitimate drug test.

5.7.   Union Pacific has a policy of driving employees they drug test to the testing site. Defendant drives Caucasian employees to the drug testing site. In this instance, Defendant not only wholly failed to drive Plaintiff to the alleged drug testing site, Defendant required Plaintiff to drive approximately 5 miles on city streets in a company vehicle – not a smart practice if they suspected Plaintiff to be under the influence.

5.8.   It was raining that evening and Plaintiff was experiencing flu-like symptoms. Since Plaintiff did not know this man and the railroad did not have anyone present to give him clarification of who this man was, Plaintiff followed protocol and waited until he could get that information and clarification. Upon leaving, Plaintiff ran into Mr. Wood, a supervisor, and told him that Plaintiff was going home as he was not feeling well. Mr. Wood told Plaintiff that he was sorry that Plaintiff was not feeling well and gave him the okay to go home. Mr. Wood never informed Plaintiff or warned Plaintiff that if Plaintiff left, it would be considered a refusal and would result in immediate removal from Plaintiff's long and loyal service with the railroad. Plaintiff would never have left if Plaintiff knew that.

5.9.   Union Pacific Railroad's Drug Testing Policy specifically indicates that, "you have a right to question and understand these requests before, during and after the testing procedure." Defendant wholly failed to follow its own policies and allow Plaintiff to question and understand the request, as was his right.

5.10.  Approximately, five hours later, Ronnie Lewis called Plaintiff and told him that he was removed from service. Shocked, Plaintiff asked him if he could come in and take the drug

test and he said no. Plaintiff went to his own doctor who noted his flu-like symptoms and performed both a blood test and a urinalysis which both had negative results.

5.11.   Plaintiff did not test positive on any drug test. Plaintiff did not refuse to take a drug test. Plaintiff simply questioned the process as was Plaintiff's company defined right, since Defendant did not follow it according to their policies and procedures.

5.12.   Plaintiff went to his own physician and underwent a drug test. Defendant refused to take Plaintiff's physician's note indicating that he was under treatment for the flu and Defendant refused to take a copy of the drug test indicating that Plaintiff tested negative.

5.13.   Defendant should not have removed Plaintiff from service because Plaintiff was simply questioning the process. Defendant does not remove Caucasian employees from service for questioning the process.

5.14.   Defendant ultimately gave Plaintiff his job back (through the grievance process), putting Plaintiff on 18th month probation and randomly testing him twice a month.

5.15.   Plaintiff was well aware that Plaintiff would be randomly tested twice a month, fully cooperated and never violated Defendant's drug policy nor did Plaintiff take or ingest any substance that would be violative of Defendant's drug policy. It is important to note that Defendant now escorted Plaintiff to the drug testing and maintained a representative during the process.

5.16.   Defendant pulled Plaintiff in for a random drug test[1] on April 28, 2010. This time Defendant had a representative drive Plaintiff to the test and remain. Plaintiff fully complied with this drug test (as Plaintiff had others while on his probation), as Plaintiff understood the process because Defendant was performing it within its promised policies and procedures.

---

[1] Defendant's policy indicates very specific criteria for random drug testing to exclude such allegations as race or any other subjective reason for testing. This mathematical formula must ensure that each covered employee has a substantially equal statistical chance of being selected within a certain time frame. This selection method must be capable of verification with respect to the randomness of the selection and records necessary to document random selection must be retained for not less than 24 months from the date upon which the specific specimens were selected. PLAINTIFF request Defendant be required to gather and produce these verifying documents and instructed to not destroy them.

5.17. Defendant's medical review officer mailed Plaintiff a letter dated May 5, 2010, which informed him that Plaintiff tested positive for cocaine metabolites. Plaintiff knew this could not be true since Plaintiff had not taken cocaine. The results of the drug test dated May 5, 2010, indicates that Plaintiff tested positive for "cocaine." Plaintiff did not take cocaine.

5.18. Defendant fired Plaintiff on May 5, 2010, days before Plaintiff received the letter from the medical review officer. Plaintiff was not allowed the opportunity to contact the medical review officer to discuss this improper result. Defendant does not fire Caucasian employees prior to the time they have had the opportunity to talk to the medical review officer or provide them with any possible clarifying information.

5.19. When Plaintiff did receive the letter from the medical review officer, Plaintiff contacted them to explain that Plaintiff did drink Inka Tea that Plaintiff's wife gave him as we were trying to wean themselves off of caffeine. Because the medical review officer had already sent the Defendant the results of my test without allowing me to follow up with information, which may have explained how Plaintiff could achieve a positive result without violating the Defendant's policies, they were rude to Plaintiff and would not engage in any discussion with him regarding his result. The Medical Review Officer did not perform a split sample.

5.20. Defendant does not stop, preclude or interfere with Caucasian employees who have extenuating circumstances or other information that could explain why a drug was in their system.

5.21. Because Plaintiff did not take any substance which would violate Defendant's Drug Policy, Plaintiff submitted himself to another urine analysis for drug testing immediately thereafter without drinking the herbal tea. Plaintiff then, in their presence, drank the herbal tea and tested positive for cocaine.

5.22. It is well reported that Physicians and Medical Review Officers should consider Inka Tea as a clarifying answer to a positive Cocaine Metabolite Drug Test and allow retesting.

5.23.   Despite this information, Defendant fired Plaintiff on May 5, 2010.

5.24.   The events of October 9, 2009 are so intertwined with Plaintiff termination of May 5, 2010 as to be unable to separate them.  If Defendant would not have treated Plaintiff less favorably than Caucasian employees and if Defendant had followed their policies and procedures Plaintiff would not have been removed from service in October or again in May.

5.25.   Plaintiff tested positive on one drug test, though Plaintiff did not take any substance that is violative of Defendant's drug policy. Plaintiff has never refused a drug test or refused to cooperate with one.

5.26.   Defendant has retained Caucasian employees who have tested positive on one drug test.

5.27.   Defendant has retained Caucasian employees who have gone through the rehab program more than one time. Defendant has retained employees who have received two DWI's while employed and for whom driving a company car was a job duty.

5.28.   Defendant replaced Plaintiff with a Caucasian employee who has significantly less experience and seniority than Plaintiff.

5.29.   Another African American employee, in a position comparable to Plaintiff's, was getting pulled all the time for drug tests by Defendant. This individual went to Ronnie Lewis and asked why Defendant was pulling him for drug tests and Mr. Lewis told him he was pulling African American employees for random drug testing because non if his white foremen would pass the drug tests.

5.29.1. Defendant has discriminated against Plaintiff in violation of Title VII of the Civil Rights Act of 1964, as amended, based on his race (African American).

5.29.2. Defendant has discriminated against Plaintiff in violation 42 U.S. § 1981 based on his race. (African American).

## 6.  DAMAGES

6.1. The above-described actions of Defendant were so outrageous in character and so extreme in degree that they exceeded all possible bounds of decency and can only be regarded as atrocious and utterly intolerable in a civilized community.

6.2. As a direct and proximate result of the aforementioned arbitrary and capricious acts, the Plaintiff has suffered grievous harm, including but not limited to, humiliation and embarrassment among co-workers, clients and others sustained damage to Plaintiff's credibility and sustained damage to Plaintiff's prospects for future employment. Plaintiff has suffered salary loss as well as loss of benefits.

## 7. EXEMPLARY DAMAGES

7.1. Defendant's actions were harsh, oppressive and malicious and as a further and proximate cause Plaintiff has suffered serious mental anguish due to Defendant's actions. The wrong done by Defendant aggravated by the kind of willfulness, wantonness, and malice for which the law allows the imposition of exemplary damages. Defendant acted with an evil intent to harm Plaintiff. The conduct was intentional, with conscious indifference to the rights of Plaintiff and without justification or excuse. Plaintiff, therefore, seeks exemplary damages in a sum to be determined by the trier of fact to serve as punishment to deter Defendant from such conduct in similar situations.

## 8. ADMINISTRATIVE CONDITIONS PRECEDENT

8.1. Plaintiff has completed all administrative conditions precedent since Plaintiff filed Plaintiff's charge of discrimination under Title VII of the Civil Rights Act of 1964, as amended within 300 days of the date Plaintiff learned of the adverse employment action.

8.2. Plaintiff has completed all administrative conditions precedent since Plaintiff filed this lawsuit within 90 days of receiving the Notice of Right to File a Civil Action from the Equal Employment Opportunity Commission.

8.3. Plaintiff has filed this lawsuit within the statute of limitations for his 42 U.S.C § 1981 claims.

## 9. ATTORNEY'S FEES

9.1. Defendants' action and conduct as described herein and the resulting damage and loss to Plaintiff has necessitated Plaintiff retaining the services of ROSENBERG & SPROVACH, 3555 Timmons Lane, Suite 610, Houston, Texas 77027 in initiating this proceeding. Plaintiff seeks recovery of reasonable and necessary attorney's fees.

## 10. JURY DEMAND

10.1. Plaintiff hereby makes Plaintiff's request for a jury trial in this cause.

## 11. PRAYER

11.1. WHEREFORE, Plaintiff prays the Court order to award such relief including the following:

11.1.1. Declare Defendant's conduct in violation of Plaintiff's rights;

11.1.2. Enjoin the Defendant from engaging in such conduct;

11.1.3. Award Plaintiff actual damages;

11.1.4. Order Defendant to pay Plaintiff back pay and front pay and benefits;

11.1.5. Award Plaintiff compensatory damages;

11.1.6. Award Plaintiff punitive damages to be determined by the trier of fact;

11.1.7. Grant Plaintiff pre-judgment and post-judgment interest;

11.1.8. Order Defendants to pay Plaintiff's costs and attorney's fees in this action; and,

11.1.9. Order and grant such other relief as is proper and just.

                                                  Respectfully Submitted,

_____
Ellen Sprovach
USDC SD/TX No. 22202
Texas State Bar ID 24000672
ROSENBERG & SPROVACH
3555 Timmons Lane, Suite 610
Houston, Texas 77027
(713) 960-8300
(713) 621-6670 (Facsimile)
Attorney-in-Charge for Plaintiff

OF COUNSEL:
Gregg M. Rosenberg
ROSENBERG & SPROVACH

                                                  ATTORNEYS FOR PLAINTIFF

Q:\Hunter, Steven\6.01\original complaint.doc