IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| STEVEN HUNTER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-11-3408 |
| | § | |
| UNION PACIFIC RAILROAD COMPANY, | § | |
| | § | |
| Defendant. | § | |
| | § | |

**MEMORANDUM AND OPINION**

Steven Hunter sued his former employer, Union Pacific Railroad Company, alleging race discrimination under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. Hunter, who is African-American, alleged that Union Pacific discriminated against him on the basis of his race. He based his claim on two incidents. The first was when Union removed him from service after he left the workplace instead of taking a scheduled drug test. He was reinstated after that incident. The second incident occurred several months later, when he was fired after taking and failing a second drug test. The court granted Union Pacific's summary judgment motion on all Hunter's claims and entered final judgment. (Docket Entry No. 31, 32). Hunter now moves for reconsideration under Federal Rule of Civil Procedure 59, and Union Pacific responded. (Docket Entry No. 33, 34).

Based on the pleadings; the motion and response; the record; and the relevant law, Hunter's motion for reconsideration is denied. The reasons are explained below.

**I.    The Rule 59(e) Standard**

The Federal Rules of Civil Procedure do not specifically provide for a motion for reconsideration. *Shepherd v. Int'l Paper Co.*, 372 F.3d 326, 328 (5th Cir. 2004); *see also St. Paul*

*Mercury Ins. Co. v. Fair Grounds Corp.*, 123 F.3d 336, 339 (5th Cir. 1997). Motions asking a court to reconsider a judgment or order are generally analyzed under the standards for a motion to alter or amend judgment under Rule 59(e) or a motion for relief from a judgment or order under Rule 60(b). *Hamilton Plaintiffs v. Williams Plaintiffs*, 147 F.3d 367, 371 n. 10 (5th Cir. 1998). Because Hunter's motion for reconsideration was filed 28 days after this court's opinion, his motion is appropriately considered under Rule 59(e).

A Rule 59(e) motion "calls into question the correctness of a judgment." *Templet v. HydroChem Inc.*, 367 F.3d 473, 478–79 (5th Cir. 2004) (citing *In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002)). "[A] motion to alter or amend the judgment under Rule 59(e) 'must clearly establish either a manifest error of law or fact or must present newly discovered evidence' and 'cannot be used to raise arguments which could, and should, have been made before the judgment issued.'" *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863–64 (5th Cir. 2003) (quoting *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)). "'Manifest error' is one that 'is plain and indisputable, and that amounts to a complete disregard of the controlling law.'" *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004) (quoting *Venegas–Hernandez v. Sonolux Records*, 370 F.3d 183, 195 (1st Cir. 2004)). The Fifth Circuit warns that altering, amending, or reconsidering a judgment under Rule 59(e) is an extraordinary remedy that courts should use sparingly. *Templet*, 367 F.3d at 479; *see also* 11 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 2810.1, at 124 (2d ed. 1995). The Rule 59(e) standard "favor[s] denial of motions to alter or amend a judgment." *S. Constructors Grp., Inc. v. Dynalectric Co.*, 2 F.3d 606, 611 (5th Cir. 1993).

**II.     Analysis**

Hunter contends that the court failed to consider important summary-judgment evidence about his refusal to take the drug test that led to his firing. That evidence included that it was his first drug test in 20 years of employment with Union Pacific, he was unfamiliar with the testing process, and no manager was at the testing site to answer his questions. As the court noted in the opinion, however, Hunter did not identify any Union Pacific requirement for a manager to be present during testing. The earlier opinion explained why the court rejected Hunter's argument that he did not have to take the test because a manager was not present:

> Paragraph 9.3.2 of Union Pacific's Drug and Alcohol Policy states that a "[d]etermination of drug use must be made by two managers, at least one of whom is trained in accordance with 49 C.F.R. Part 219.11(g) and is on site." (Docket Entry No. 20, Ex. D). This rule applies only to drug testing based on reasonable suspicion or reasonable cause. Hunter's test was random, and Union Pacific's policies for random tests do not require a manager to be present during testing. . . . Hunter also points to the "donor instructions for drug tests." Although those instructions state, "You must cooperate with the railroad representative and the collector," they do not state that a railroad representative must be physically present during the sample collection. (Docket Entry No. 21, Ex. 2).

(Docket Entry No. 31 at 9–10).

Hunter also points to a provision in Union Pacific's drug-testing instructions stating: "You have every right to question and understand [the drug testing] requirements before, during, and after the testing process." (Doc. Entry No. 21, Ex. 2). But, as this court noted in its earlier opinion, those instructions do not state that an employee "may refuse to take a drug test because he has questions" and leave the testing site. (Docket Entry No. 31 at 12). Union Pacific's drug-testing instructions clearly state that not submitting to a test for any non-emergency reason is a "refusal." The instructions warn: "Your test must begin immediately. There can be no delay for any reason. If you delay the test or if you don't cooperate, it will be considered refusal." (Docket Entry No. 21, Ex.

3

2). The instructions also state that the "railroad will excuse compliance with these testing requirements only in case of a documented medical or family emergency, e.g., a life threatening condition." (*Id.*).

Hunter contends that he was excused from taking Union Pacific's drug test because his supervisor Jason Wood did not warn him that he could be fired if he refused to submit to the drug test and left the worksite. But, as Hunter acknowledges in his motion for reconsideration, Wood was not a manager, had no knowledge of Union Pacific's drug-testing policy, and played no role in administering his test. Hunter has not provided or pointed to any evidence that either of the two individuals who were involved in his drug test — Ronald Lewis and the sample collector — told him that he was permitted to leave work without taking the test. This argument is not a basis for reconsideration.

Summary judgment was also warranted for another reason. Hunter failed to submit or point to evidence that Union Pacific's decision to terminate his employment was a pretext or that racial discrimination was a motivating factor.

> Even if Hunter is correct that Union Pacific failed to follow its testing procedures, this is not sufficient to give rise to an inference or fact dispute that he was subject to racially discriminatory disparate treatment. "A defendant's failure to follow its own policy is not probative of discriminatory animus in the absence of proof that the plaintiff was treated differently than other non-minority employees because Title VII does not protect employees from the arbitrary employment practices of their employer, only their discriminatory impact." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337 (5th Cir. 2007) (quotation marks and citation omitted). Hunter has not pointed to any comparators or other evidence suggesting that Union Pacific followed the policies he cites for employees who were not African-American.

(Docket Entry No. 31 at 11).

4

Hunter contends that Wood "has shown his discriminatory animus in general at work by using the word, 'nigger' in a work setting." (Docket Entry 33 at 3). As this court pointed out, Wood's remarks, although highly offensive, do not support an inference that Hunter's October 2009 drug test and the discipline for his refusal to take it was racially discriminatory:

> To be evidence of discrimination, workplace comments must be "'1) related to the protected class of persons of which the plaintiff is a member; 2) proximate in time to the terminations; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue.'" *Barrientos v. City of Eagle Pass, Tex.*, 444 F. App'x 756, 758 (5th Cir. 2011) (quoting *Krystek v. Univ. of S. Miss.*, 164 F.3d 251, 256 (5th Cir. 1999)). Wood made the comments in November 2011, long after Hunter's drug tests. The comments were not related to the decision to remove Hunter from service for declining the October 2009 test. (Docket Entry No. 21, Ex. B at 7). Hunter has also failed to point to any evidence that Wood was involved in having Hunter take the drug test or in removing him from service for refusing to do so. Wood's derogatory remarks are not evidence that Union Pacific discriminated against Hunter in testing him, considering his actions a refusal, or withdrawing him from service.

((Docket Entry No. 31 at 12–13).

Hunter contends that he complained to Union Pacific that his proposed termination was discriminatory but Union Pacific failed to investigate. The evidence Hunter has submitted suggests otherwise. Hunter points to Union Pacific's recorded description of his October 15, 2009 complaint. That description reflects that Hunter told Union Pacific that "his rights were violated" by the drug test and that he felt that "this may be an issue of racism because there are only Caucasian males at this location." (Docket Entry No. 21, Ex. 5). Hunter also points to an October 15 email from Paul Jones, Union Pacific's Houston operations support director, to Amy Bang, its EEO compliance manager. In his email, Jones stated that he will "close out [Hunter's] value line complaint showing it being handled by EEO." (*Id.*, Ex. 6). Jones instructed Bang to "request any

information you deem helpful in closing this file from the investigation from Ronnie Lewis or Curtis Grace" and to "[l]et [him] know if you need further information on the case." (*Id.*). The following day, Bang forwarded Jones's email to Penny Lyons, asking that she look at it and then call her. (*Id.*). Hunter has not submitted or pointed to any evidence of showing how Union Pacific's internal investigation into the complaint progressed after October 16. The evidence in the record does not support an inference that Union Pacific failed to investigate Hunter's discrimination complaint or that the investigation it conducted was racially discriminatory.

**III.   Conclusion**

Hunter's motion for reconsideration is denied.

SIGNED on August 23, 2013, at Houston, Texas.

Lee H. Rosenthal
United States District Judge